ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

KEITH VERCAUTEREN
Assistant U.S. Attorney
Arizona State Bar No. 013439
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: keith.vercauteren@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | Magistrate's Case No. 18-1760MJ (JFM) |
| --- | --- |
| Plaintiff, | Magistrate's Case No. 18-1767MJ (JFM) |
| v. | **UNITED STATES' MEMORANDUM FOR DETENTION** |
| Jesus Ivan Lopez Garcia, | |
| Defendant. | |

The United States of America files this Memorandum seeking the detention of JESUS IVAN LOPEZ GARCIA (Defendant) pending trial since Defendant poses both a flight risk and a danger to the community.

**I.   PROCEDURAL HISTORY**

On August 13, 2018, Defendant was arrested and a Complaint was filed on August 14, 2018, charging Defendant with Count 1, Possession with Intent to Distribute 500 grams or more of methamphetamine, Count 2, Possession with Intent to Distribute 5 kilograms or more of cocaine, and Count 4, Possession with Intent to Distribute 1 kilogram or more of heroin, all in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); and Count 3, Possession with Intent to Distribute a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

On August 15, 2018, law enforcement executed Federal search warrants at Defendant's business and residence.  Law enforcement discovered a transnational tunnel

from the Republic of Mexico into Defendant's business in San Luis, Arizona.

On August 16, 2018, a Complaint was filed charging Defendant with one count of Conspiracy to Construct a Border Tunnel, in violation of 18 U.S.C. § 555.

## II.  FACTS

On August 13, 2018, at approximately 5:45 p.m., a San Luis Police Department Officer observed JESUS IVAN LOPEZ GARCIA driving a white 2015 Chevrolet Silverado pickup truck bearing Arizona license plate CCL5849 with a trailer attached to the hitch traveling near Somerton, Arizona.  The Officer conducted a traffic stop for an equipment violation.  During the traffic stop, a Narcotic Detection Dog (NDD) positively alerted for the presence of drugs on the trailer.  The trailer was not covered, and law enforcement found two large containers filled with packages wrapped in plastic.  Suspecting the packages to contain a large quantity of drugs, the officer called Federal Special Agents from Homeland Security Investigations (HSI).

The HSI agents removed the two containers from the trailer, which contained two-hundred thirty-nine (239) packages, including 118.65 kilograms (261 pounds) of methamphetamine, 6.4 kilograms (14 pounds) of cocaine, 13.65 kilograms (30 pounds) of white heroin, 6.25 kilograms (13.7 pounds) of brown heroin, and 3.1 kilograms (6.8 pounds) of fentanyl.

On August 15, 2018, law enforcement executed Federal search warrants at Defendant's business and residence. A search of Yuma County Assessor's records verifies that Defendant's business property at 552 San Luis Plaza Drive, San Luis, Arizona, is owned by Defendant.  Specifically, records show that Defendant purchased this property on April 17, 2018, for $390,000.00.  Records also reveal that Defendant paid this entire sum in United States currency.  The property's recording date was verified as May 1, 2018, with a reception number of 2018-11384.  Defendant's business property is located approximately two hundred yards north of the international border with the city of San Luis Rio Colorado, Mexico.  This area of the border is marked by a primary fence along the border, and a secondary fence, approximately fifty yards north of the primary fence.

The Defendant's business property contains a structure that was a Kentucky Fried Chicken fast food restaurant for several years. However, the structure was vacant in recent years and was not used for business. Law enforcement observed Defendant coming in and out of this business property on several occasions, including carrying the large containers from the business to the trailer just prior to the traffic stop on August 13, 2018.

On August 15, 2018, at approximately 2:00 p.m., law enforcement searched Defendant's business property, and located an opening in the floor of the property. The opening lead to a tunnel, which was large enough for people to walk and transport packages through the tunnel and into Defendant's business property. On August 15, 2018, agents were informed by representatives of the Mexican government that the tunnel did in fact transverse the international border between the Republic of Mexico and the United States. HSI Special Agents have also verified that the Secretary of the Department of Homeland Security did not authorize the tunnel and that the tunnel is in fact subject to inspection by Immigration and Customs Enforcement (ICE). The approximate distance from the tunnel's exit point on the defendant's property in San Luis, Arizona from the primary border fence demarking the international border is approximately 610 feet (610 feet is approximately 200 yards). This distance does not include the exact distance from the tunnel's entry point in San Luis Rio Colorado, Mexico to the international border.

A clandestine, unauthorized, underground tunnel traversing the United States and the Republic of Mexico is not the sort of undertaking that could have been accomplished by Defendant alone. This tunnel would take this Drug Trafficking Organization (DTO) a long time to construct and would have been very expensive. In the experience of HSI Special Agents, such an endeavor necessarily requires a combination of several individuals on both sides of the border, engaged in an intricate, risky transnational conspiracy to construct such a secretive structure. Such tunnels, not uncommon to the border of the United States and the Republic of Mexico, are almost exclusively used for the smuggling of narcotics from Mexico into the United States.

### III. DEFENDANT'S CRIMINAL HISTORY

Defendant was charged with Count 3, Conspiracy to Possess with Intent to Distribute 500 grams or more of methamphetamine, and 5 kilograms or more of cocaine; Count 4, Conspiracy to Commit Promotional Money Laundering; and Count 5, Conspiracy to Commit Concealment Money Laundering on December 11, 2012, with a Superseding Indictment on January 15, 2013. On February 3, 2014, Defendant pleaded guilty to Count 5. On May 27, 2014, Defendant was sentenced to eleven months imprisonment followed by a three-year term of supervised release. The count to which Defendant pleaded guilty explicitly stated that the acts which constitute the offense "involved the proceeds of specified unlawful activity, that is, the possession with intent to distribute methamphetamine and cocaine, in violation of Title 21, United States Code, Section 841."

On June 1, 2006, Defendant was convicted of two counts of Driving Under the Influence (DUI), and Extreme DUI. On February 8, 2010, Defendant was convicted again of DUI. On August 28, 2013, Defendant was convicted of Driving on a Revoked Driver's License.

### IV. LEGAL ANALYSIS

Pursuant to Title 18, United States Code, Section 3142(e), a judicial officer shall order the detention of the person before trial if the officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. Section 3142(e) contains a presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community based on the nature of his charges.

Title 18, United States Code, Section 3142(g) outlines the factors to be considered which include:

(1) the nature and circumstances of the offense charged, including whether the offense … involves a … controlled substance;

(2) the weight of the evidence against the person;

(3) the history and characteristic's of the person, including

(A) … family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, …; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

### 1) Nature and Circumstances of the Offense

Defendant is charged with Possession with Intent to Distribute methamphetamine, cocaine, and heroin, which all carry a mandatory minimum sentence of ten (10) years, with a maximum of life imprisonment. Defendant is also charged with Possession with Intent to Distribute fentanyl and Conspiracy to Construct a Border Tunnel, which both carry a maximum of twenty (20) years' in prison. Under the United States Sentencing Guidelines (U.S.S.G.), Defendant is facing an Offense Level of 42, which includes a base offense level of 38 for the large quantities of drugs, a two-level enhancement for importation of methamphetamine, and another two-level enhancement for maintaining a drug premise. Defendant has a Criminal History Category II, and therefore, Defendant is facing an advisory guideline range of 360 months to life in the Bureau of Prisons.

The tunnel that ended in the Defendant's business property extended to Mexico and was built for smuggling large quantities of controlled substances. This tunnel was very well constructed and would have taken this Drug Trafficking Organization (DTO) a long time to dig and would have been very expensive. This tunnel necessarily required a combination of several individuals on both sides of the border, engaged in an intricate, risky transnational conspiracy to construct such a secretive structure. A DTO would limit knowledge and access to this type of tunnel to very few well-trusted members of the organization.

Defendant was clearly a well-trusted member of this DTO. Not only was Defendant trusted with knowledge and access to this transnational tunnel, Defendant was trusted with a very large quantity of expensive drugs. Based on wholesale prices in Arizona, 261 pounds of methamphetamine is worth $417,600, 6.4 kilograms of cocaine is worth $134,400, 13.65 kilograms of white heroin is worth $395,850, 6.25 kilograms of brown heroin is worth

$118,750, and 3.1 kilograms of fentanyl is worth $99,200. Therefore, Defendant was trusted with $1,165,800 worth of controlled substances.

Based on the possible punishment in this case, Defendant has every incentive to flee this prosecution. Additionally, Defendant lost over $1 million worth of drugs and the investigation led law enforcement to the tunnel at his business property. Therefore, Defendant may face repercussions from the DTO and may flee to avoid consequences due to the drug seizure and dismantlement of the expensive tunnel. These facts show that the nature and circumstances of the crimes support a finding that Defendant is a flight risk and a danger to the community.

**2)   Weight of the Evidence**

Law enforcement observed Defendant at his business property on several occasions, including carrying the large containers from the business to the trailer just prior to the traffic stop on August 13, 2018. Defendant was the sole occupant and driver of the truck when stopped by law enforcement and the drugs were found in his possession. Following the traffic stop and seizure of the large quantity of drugs, law enforcement executed a search warrant at Defendant's business property and located the transnational tunnel. Therefore, the United States views its evidence as strong in this case.

**3)   History and Characteristics of Defendant**

Defendant has documented issues with alcohol abuse. Defendant has two prior convictions for DUI, including extreme DUI, in 2006 and 2010. Even after Defendant's driving privileges were revoked, Defendant disobeyed court rules and drove anyway, resulting in a conviction for driving on a revoked driver's license in 2013. As stated above, Defendant has a previous felony conviction in 2014 for money laundering for drug traffickers. Despite facing severe consequences in Federal Court previously, Defendant has continued to engage in more dangerous conduct involving drug trafficking.

Defendant also has strong ties to Mexico. Defendant admitted to the Pretrial Services Officer that he travels to Mexico about three times per month and stays overnight at his parent's house. Defendant could easily flee the United States if released in this case and

comfortably reside in Mexico with a place to live and familial ties. Thus, Defendant's history and characteristics demonstrate that he is a flight risk and a danger to the community.

### 4) Nature and Seriousness of Danger

Defendant had a large quantity of dangerous drugs. The Court is well aware of numerous cases of individuals committing violent acts while high on methamphetamine. It has also been well reported that the United States is facing an epidemic of heroin overdose cases. Fentanyl is synthetic heroin, which is an extremely toxic substance that has also led to numerous overdose deaths. The amount of these dangerous drugs posed an extreme danger to our community. Defendant committed these crimes while he was recently released from supervision for a Federal felony conviction. Therefore, these facts show that Defendant is a flight risk and a danger to the community.

## V. CONCLUSION

Defendant should be detained as a flight risk by a preponderance of the evidence and a danger to the community by clear and convincing evidence. The fact that the defendant is facing a lengthy prison term is a factor this Court should consider in assessing the risk of flight of Defendant. Defendant may face repercussions from the DTO and may flee to avoid consequences due to the drug seizure and dismantlement of the expensive tunnel. Defendant has alcohol problems with numerous DUI convictions. Defendant also has a previous Federal felony conviction for similar conduct and involvement with drug traffickers. Instead of learning from his past misdeeds, Defendant has escalated his behavior and status as a trusted member of a drug trafficking organization. No condition or combination of conditions would reasonably assure Defendant's appearance or the safety of others in the community. The charges in this case carry a presumption of detention, and based on all of the facts above, Defendant cannot rebut the presumption. Therefore, the United States respectfully requests that the Court order Defendant be detained as both a flight risk and a danger to the community.

Respectfully submitted this 17th day of August, 2018.

> ELIZABETH A. STRANGE
> First Assistant United States Attorney
> District of Arizona
>
> *s/ Keith Vercauteren*
> KEITH VERCAUTEREN
> Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2018, I electronically transmitted the attached document using the CM/ECF System to the Clerk's office as well as the following registrant:

Paul Ramos
Attorney for Defendant

*s/ Keith Vercauteren*
KEITH VERCAUTEREN
Assistant U.S. Attorney