**SUZUKI LAW OFFICES**
Attorneys at Law
Richard J. Suzuki, Esq. No. 021348
Seth Apfel, Esq. No. 032225
2929 E. Camelback Rd. Ste. 224
Phoenix, Arizona 85016
Phone: (602) 682-5270
Fax: 480-907-1571
Attorneys@suzukilawoffices.com

Attorneys for Defendant *Lopez-Garcia*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. 2:18-cr-01212-DLR-1 |
| Plaintiff, | |
| vs. | DEFENDANT JESUS IVAN LOPEZ-GARCIA'S SENTENCING MEMORANDUM |
| Jesus Ivan Lopez-Garcia, | |
| Defendant | (In custody) |

COMES NOW Defendant, Jesus Ivan Lopez-Garcia ("Mr. Lopez-Garcia"), by and through counsel undersigned, herein submits "Defendant Jesus Ivan Lopez-Garcia's Sentencing Memorandum" for the sentencing hearing set before the Court for September 16, 2019.

Undersigned counsel has had the entire Presentence Report (PSR) read to Mr. Lopez-Garcia in Spanish, has reviewed the PSR with Mr. Lopez-Garcia, and Mr. Lopez-Garcia has filed a separate motion detailing his objections to the contents and/or findings

of that report.  All facts and statements of law in Mr. Lopez-Garcia's separately filed objections are hereby incorporated by reference.

In accordance with the statutory sentencing factors set forth in 18 U.S.C. § 3553(a), and in addition to the adjustments/departures detailed in his objections to the PSR, Mr. Lopez-Garcia respectfully requests that he be given a substantial variance below the guideline range of 360 months.  Specifically, he respectfully requests that he be sentenced to 60 months of imprisonment, and that no further fine be imposed other than the mandatory $100 assessment.  Given the particular circumstances of this case, most notably a significant search issue and the factors set forth in 18 U.S.C. § 3553(a)(1)-(7), a sentence of 60 months of imprisonment will provide sufficient punishment, promote respect for the law, and allow for adequate deterrence.

## MEMORANDUM OF POINTS AND AUTHORITIES

**INTRODUCTION**

Mr. Lopez-Garcia will be sentenced on September 16, 2019, after pleading guilty to Count 1 of the Indictment charging him with Using a Tunnel or Passage to Smuggle Controlled Substances, a class A felony offense in violation of 18 U.S.C. § 555(c).  Count 1 has a statutory maximum of life imprisonment.

The plea agreement stipulates that Mr. Lopez-Garcia's sentence shall not exceed 84 months.  There is no minimum, so the Court has discretion to sentence Mr. Lopez-Garcia to between probation and 84 months of imprisonment.  The plea does not include any provision respecting departures, adjustments, or variances, so Mr. Lopez-Garcia may

permissibly request any of them. The plea additionally stipulates that counts 2 through 5 will be dismissed, and that the U.S. Attorney's Office will not prosecute Mr. Lopez-Garcia for any other offense in connection with the investigation that led to the indictment. The plea agreement recommends a three level reduction based on acceptance of responsibility (USSG § 3E1.1). Finally, the plea allows Mr. Lopez-Garcia to withdraw if given a sentence in excess of 84 months imprisonment.

Given the PSR recommendation of 360 months and the plea stipulation to no more than 84 months (the rationale for which is explained in detail below), Mr. Lopez-Garcia notes that, should the Court impose a sentence of greater than 84 months, it is his intention to withdraw from the plea.

**RECOMMENDATIONS OF THE PSR**

The presentence report (PSR) determined the total offense level to be 43, based upon base and adjusted offense levels of 46 and a three level reduction for acceptance of responsibility (USSG § 3E1.1). Two additional levels were subtracted for Safety Valve pursuant to 18 U.S.C. § 3553(f), reducing the total offense level to 41. The PSR determined that Mr. Lopez-Garcia falls within criminal history category II based upon 3 criminal history points. Though Mr. Lopez-Garcia has objected to one of those points, it will not change his criminal history category even if sustained. The PSR thus determined the applicable guideline range to be between 360 months and life. Notwithstanding the plea agreement, the PSR recommended a sentence of 360 months. The PSR additionally recommended a $10,000 fine.

Mr. Lopez-Garcia strongly disagrees with the final recommendation of the PSR, for reasons discussed below.

Considering all factors, though the guideline range is 360 months to life, based on the factors discussed below, a variance well below the guideline range is warranted.

**LEGAL ISSUE THAT LED TO THE CURRET PLEA AGREEMENT**

Mr. Lopez-Garcia understands that the plea represents a substantial departure from the guideline range.  In addition to the factors discussed elsewhere in this sentencing memorandum, a major consideration respecting the plea agreement was the existence of a significant search issue.  Based on that search issue, it was possible that all evidence in the case could have been suppressed, requiring dismissal of the case.  On the other hand, Mr. Lopez-Garcia recognizes that he also could have lost the suppression issue, exposing him to a substantial prison term, and creating a circumstance through which he would have had to serve considerable while awaiting appeal even if successful. The plea agreement represents a calculated agreement through which both sides assessed the merits of the suppression issue, the potential benefits of success and risks of an unfavorable decision, and ultimately determine the negotiated agreement to be in the interests of both sides.

As for the issue itself, undersigned counsel has attached the actual suppression motion for the Court's review, [Exhibit A] – counsel has not attached the various exhibits, but can do so if the Court requests.  An abridged version of the argument is included here for the Court's review.

The primary issue was the illegal prolongation of a traffic stop pursuant to *Rodriguez v. United States*, 135 S. Ct. 1609 (2015).  A routine traffic stop is analogous to a *Terry* stop, so in both contexts, "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (citing *Knowles v. Iowa*, 525 U.S. 113, 117 (1998), *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)) (internal citation omitted).  "Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.'" *Id*. (citing *United States v. Sharpe*, 470 U.S. 675, 685 (1985); *Royer,* 460 U.S. at 500; *Caballes*, 543 U.S. at 407) (brackets in original).  Consequently, "[a]uthority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed," *id*. (citing *Sharpe*, 470 U.S. at 686), and a traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a warning ticket," *id*. at 1614-15 (citing *Caballes*, 543 U.S. at 407) (brackets in original), or if unrelated inquiries extend the duration of the stop. *Id*. at 1615 (citing *Arizona v. Johnson*, 555 U.S. 323, 330 (2009)).

In the context of a traffic stop, "an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" *Id*. (quoting *Caballes*, 543 U.S. at 408).  Such inquiries include checking the driver's license, determining whether the driver has outstanding warrants, and inspecting registration and proof of insurance. *Id*. (citing *Delaware v. Prouse,* 440 U.S. 648, 658–660 (1979)).  In contrast, a dog sniff "is a measure aimed at

'detect[ing] evidence of ordinary criminal wrongdoing.'" *Id*. (quoting *Indianapolis v. Edmond*, 531 U.S. 32, 40–41 (2000)). Accordingly, the Supreme Court held that a police stop that exceeds the time necessary for handling the matter that formed the basis for the stop becomes unlawful if prolonged in order for police to conduct a dog sniff. *Id*. at 1612-1616. The Court also held that whether a dog sniff, or other police action prolonging a stop, occurs before or after completion of the matter that led to the original stop has no bearing on the lawfulness of police action prolonging a stop, instead holding that the relevant issue is solely whether the stop was prolonged beyond what was necessary for the purpose of the stop. *Id*. at 1616.

Here, San Luis Police, whether or not at the direction of federal agents, effected a traffic stop respecting Lopez-Garcia. Assuming, *arguendo*, that the stop itself was lawful, the warrants and law enforcement reports are consistent in clearly delineating that the purpose of the stop was for an equipment violation and two moving violations.

The reports are equally clear in indicating that the truck and trailer were registered to Lopez-Garcia, and the driver was identified as Lopez-Garcia, and this was done well before Cardenas arrived. As such, prior to the arrival of the K9, Vasquez had verified identity, registration, and that there were no warrants. The only other aspect of the mission of the stop would have been to write citations or warnings. Yet Vasquez continued to detain Lopez-Garcia, for a total 28 minutes, before the arrival of Cardenas with the canine. In fact, the audio recording indicates that Vasquez actually arrested Lopez-Garcia, without probable cause, and engaged in a lengthy conversation with him

while waiting for Cardenas to arrive. While Vasquez claims that Lopez-Garcia consented to a search of his truck, Vasquez's other claims are belied by the audio recording, and thus cannot carry any weight. The recording includes no consent, it includes no request for consent (either for a search of the truck or for a dog sniff), it begins well before the arrival of Cardenas and makes it clear that Vasquez is passing time while waiting, and Lopez-Garcia told Vasquez repeatedly that he does not speak English well.

It is also clear that, during this apparently fourteen minute span between the beginning of the audio and when the dog actually alerted, Vasquez was no longer engaged in any function related to the mission of the stop. No explanation exists in any evidence to justify the significant and impermissible extension of the duration of the traffic stop. At the time, the officers had no basis to believe that criminal activity was afoot. Assuming, *arguendo*, that they could consider events that had occurred at the 552 property, the information that they had was consistent with a man who owned a property and was doing construction on that property. Lopez-Garcia's responses and relaxed conversation with the officers further supported the notion of a lack of criminal activity. Nothing in the warrant affidavits or report of investigation provided any basis for a particularized and articulable suspicion, respecting information available to law enforcement prior to the stop, that Lopez-Garcia was engaged in criminal activity. To the contrary, officers had nothing more than hunches.

In light of the forgoing, and particularly given the clear evidence of failure to pursue the mission of the stop as shown in the audio recording, Vasquez illegally

extended the duration of the traffic stop in order to wait for Cardenas to arrive and conduct a dog sniff. The impermissible extension, violated the Fourth Amendment and clearly established case law, as described above. Since the search and continued detention were illegal, and further since there was no intervening circumstance to overcome the taint of the illegality, everything that occurred following the impermissibly extended duration is tainted by the illegality and requires suppression, including all statements made by the defendant, all evidence found during the search of the car, and all evidence obtained pursuant to warrants that were issued in reliance on what was found during the search. *See Utah v. Strieff*, 136 S. Ct. 2056, 2062-63 (2016).

In addition to the forgoing, it should be noted that a partial audio recording of the stop was made by San Luis police. Police apparently cherry-picked when to begin the recording, neglecting to record any part of the stop until, without explanation, they began questioning Mr. Lopez-Garcia about matters outside the scope of the traffic stop. Police placed Mr. Lopez-Garcia under arrest two and a half minutes into the recording, even though there was no probable cause for arrest at that time. The officer additionally continues to question Mr. Lopez-Garcia for four to five minutes, and in the police report claimed Mr. Lopez-Garcia gave him consent to conduct a dog sniff. However, the alleged consent is not on the audio recording (in fact, on the recording Mr. Lopez-Garcia is heard denying consent), and, in any case, Mr. Lopez-Garcia says repeatedly that he does not speak English well, and all questioning was in English.

It is also noteworthy that the San Luis Police Department, not long before this stop, had an organizational assessment done of their department, as assessment that found that San Luis Police, *inter alia*, have outdated policies, have significant problems with evidence storage procedures, including missing, stolen, and intermingled evidence, and have had issues with misconduct and insufficient internal affairs investigations and procedures, as well as a lack of any early intervention system to identify problematic employee behavior.

Given the totality of facts and circumstances, Mr. Lopez-Garcia believes he had a very good chance of being successful on a motion to suppress. However, he does recognize the substantial risk he faced if he lost on the suppression issue. Consequently, in return for his agreement and consideration not to litigate the suppression issue, the Government agreed to extent an offer that represents a substantial variance below the guideline range.

**MR. LOPEZ-GARCIA'S BACKGROUND**

Mr. Lopez-Garcia's personal background is contained within the PSR, Part C – Offender Characteristics, pg. 11, ¶ 39 through p. 15, ¶ 63, and that information is incorporated herein by reference.

In the instant case, Mr. Lopez-Garcia is 39 years old. His family is exceptionally supportive, most notably his wife. When he is released, he will be able to return to his wife, who has decided to remain with him through his term of incarceration.

Mr. Lopez-Garcia notes that he is a U.S. citizen. As such, the recommendation in the PSR, in the third paragraph of page 21, that any supervised release include a term "prohibiting any unauthorized return to the United States," would be illegal, and cannot be imposed.

While Mr. Lopez-Garcia will not repeat the mitigating factors outlined in the PSR, there is one issue that should be highlighted, notably his struggles with substance abuse. He admitted serious issues with alcohol and cocaine, and those struggles were a factor in the commission of his offense. He is interested in getting help to move past those addictions. Additionally, it is noteworthy that Mr. Lopez-Garcia has a marketable skill as an electrician to help him maintain a crime-free lifestyle when released.

### *TIMBS v. INDIANA* AND THE RECOMMENDED IMPOSITION OF A FINE

The PSR recommended the imposition of a $10,000 fine. However, based on based on *Timbs v. Indiana*, 139 S. Ct. 682 (2019), Mr. Lopez-Garcia believes such a fine, under the circumstances of this case, specifically, the sizeable value of his property that is being forfeited under the plea agreement, would be improper.

In *Timbs*, the facts were effectively reversed from the present case – there, Indiana sought forfeiture of a $42,000 vehicle in addition to the fine of $1,203 imposed. *Timbs*, 139 S. Ct. at 686. Here, Mr. Lopez-Garcia has already agreed to forfeit the property at 552 San Luis Plaza Drive (based on $390,000 purchase with a $310,000 mortgage, a loss of $80,000 of equity), a 2015 Chevy Silverado, and a trailer. Combined, the value of the property being forfeited is substantial, possibly $150,000 or so.

"Under the Eighth Amendment, '[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.'" Taken together, these Clauses place 'parallel limitations' on 'the power of those entrusted with the criminal-law function of government.'" *Id*. at 687 (quoting *Browning-Ferris Industries of Vt., Inc.* v. *Kelco Disposal, Inc.*, 492 U.S. 257, 263 (1989)) (brackets in original). Consequently, civil *in rem* forfeitures are covered by the Eighth Amendment's clause prohibiting excessive fines when they are at least partially punitive.

Here, because the forfeiture is incorporated into a plea agreement, it must be construed to be at least partially punitive. As such, the forfeiture falls within the ambit of the Excessive Fines clause. As a result, the imposition of a $10,000 in addition to the forfeiture would be excessively punitive, and no additional fine should be imposed other than the $100 mandatory assessment.

**III.   THE SENTENCING FACTORS SET FORTH IN 18 U.S.C. §3553 SUPPORT A VARIANCE AND REASONABLE SENTENCE BELOW THE GUIDELINE RANGE**

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the United States Sentencing Guidelines are advisory, not mandatory. In other words, the Guidelines are a required *consideration*, but district courts are permitted to tailor a particular sentence in light of other statutory concerns. *Id*. at 239. "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id*. at 239; *see also*, *United States v. Menyweather,* 447 F.3d 625 (9th Cir. 2006).

A district court's discretion under the § 3553(a) factors is quite broad. *See United States v. Sylvester Norman Knows His Gun, III,* 438 F.3d 913, 918 (9th Cir. 2006) (explaining that consideration of § 3553(a) factors "does not necessitate a specific articulation of each factor separately"). The court has broad power to make a reasoned decision on the individualized facts before it. *Rita v. United States,* 551 U.S. 338 (2007).

Looking to the factors to be considered under 18 U.S.C. § 3553(a), as for the nature and circumstances of the offense, there is no evidence whatsoever that Mr. Lopez-Garcia used or threatened any violence, or had any involvement whatsoever with the use or threatened use of any violence.  While the amount of drugs involved was very substantial, the lack of any victim or violence, and the fact that he had no weapons, mitigates the quantities involved.  There is also no evidence that Mr. Lopez-Garcia knew what substances or what amounts of those substances were in the tote.

While the seriousness of the offense and just punishment, and possibly the need to avoid sentencing disparities (this factor less so, as the search issue represents an extraordinary circumstance), suggest a longer prison sentence might be appropriate, other factors suggest more a lenient sentence would be appropriate.  Respecting deterrence, this factor cuts both ways – in addition to needing to deter criminal conduct, police misconduct also must be deterred.  While the search issue will not be litigated if the plea is accepted and Mr. Lopez-Garcia is sentenced to 84 months or less, the prison term will likely be far longer than he has ever served, deterring his conduct.  Yet it will be far less than what he could have received, deterring police misconduct.  The plea thus strikes a

balance, meeting the goal of deterrence on both sides.

As for the resources Mr. Lopez-Garcia will need, they are not substantial – primarily, they consist of substance abuse counseling and treatment, which he will receive both while in custody and through RDAP if he qualifies. Given his status as a skilled electrician, he should be able to find work on his release.

Considering the totality of § 3553(a), and the possible sentences Mr. Lopez-Garcia could face, a variance is warranted most notably to comport with the mutual interests of Mr. Lopez-Garcia and the government in light of the search issue, as well as to ensure that Mr. Lopez-Garcia's sentence properly reflects the nature and circumstances of his offenses and the seriousness thereof, to promote respect for the law, to provide just punishment, and to afford deterrence. Accordingly, a sentence of 60 months would be appropriate.

### IV. CONCLUSION

Based upon the foregoing, Mr. Lopez-Garcia respectfully requests that the Court sentence him to 60 months of incarceration. Given the particular circumstances of this case, including Mr. Lopez-Garcia's history, acceptance of responsibility, and family support, the requested sentence will provide sufficient punishment, promote respect for the law, and allow for adequate deterrence.

RESPECTFULLY SUBMITTED this 16th day of August, 2019.

**SUZUKI LAW OFFICES**

/s/     *Seth Apfel*
         Seth Apfel, Esq,
         Attorneys for Defendant *Lopez-Garcia*

# CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable Susan M. Brnovich
UNITED STATES DISTRICT COURT
Brnovich_chambers@azd.uscourts.gov

Keith Eric Vercauteren
Assistant United States Attorney
UNITED STATES ATTORNEY'S OFFICE
keith.vercauteren@usdoj.gov

Maria Rodriguez Gutierrez
Assistant United States Attorney
UNITED STATES ATTORNEY'S OFFICE
maria.gutierrez@usdoj.gov

                                                    */s/*     *Seth Apfel*
                                                         Seth Apfel, Esq,
                                                         Attorneys for Defendant *Lopez-Garcia*