MICHAEL BAILEY
United States Attorney
District of Arizona
KEITH E. VERCAUTEREN
Arizona State Bar No. 013439
MARIA R. GUTIERREZ
Arizona State Bar No. 026659
Assistant United States Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona  85004
Telephone: 602-514-7500
Email: keith.vercauteren@usdoj.gov
Email: maria.gutierrez@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-18-1212-PHX-SMB |
|---|---|
| Plaintiff, | **UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT AND THE UNITED STATES' SENTENCING RECOMMENDATION** |
| v. | |
| Jesus Ivan Lopez-Garcia, | |
| Defendant. | |

The United States of America responds to the Defendant's, Jesus Ivan Lopez-Garcia, objections to the Presentence Report (PSR) (Docs. 38, 39).  First, the Defendant was properly assessed a criminal history point for a 2009 conviction for driving under the influence ("2009 conviction"). Defendant failed to provide any evidence that would overcome the presumption that there was a valid waiver of counsel.  Second, a fine of $10,000 and not excessive despite the forfeiture of the abandoned Kentucky Fried Chicken (KFC) that the Defendant purchased and where a drug tunnel was found, a white 2015 Chevrolet Silverado truck ("white Silverado"), and a trailer used to haul drugs (collectively referred to as "the property").  Third, the United States agrees with Defendant that he is a United States citizen; thus, he is not prohibited from returning to the United States.

If the Court overrules the Defendant's objections, his offense level (OL) is 43, criminal

history category (CHC) III (life).  For the reasons set forth below and in accordance with the plea agreement, the United States requests a sentence of 84 months, to be followed by five years of supervised release, and a $10,000 fine.

## MEMORANDUM OF POINTS AND AUTHORITIES

I. FACTS

On August 1, 2018, law enforcement began surveilling the abandoned KFC.  On August 13, 2018, a San Luis Police Department (SLPD) officer observed the Defendant driving the white Silverado with the trailer attached near Somerton, Arizona.  The SLPD officer conducted a traffic stop on the vehicle.  During the traffic stop, a canine was requested by the officer.  The canine alerted to the trailer.  The trailer had two large totes.  The totes contained 118.65 kilograms of methamphetamine, 6.4 kilograms of cocaine, 13.65 kilograms of white heroin, 6.25 kilograms of brown heroin, and 3.1 kilograms of fentanyl.

On August 15, 2018, a search warrant was executed at the KFC.  Law enforcement found an opening to an underground tunnel.  It was later determined that the tunnel traversed the international border and that there was a corresponding opening for the tunnel in Mexico.

II. LEGAL ANALYSIS

    a. The Defendant was properly assessed a criminal history point for the 2009 conviction because he did not provide evidence that he was deprived of the assistance of counsel.

Uncounseled convictions count for criminal history points unless the defendant can "overcome the presumption that there was a valid waiver of counsel." *See United States v. Allen*, 88 F.3d 765, 772 (9th Cir. 1996); *United States v. Roberts*, 419 Fed. Appx. 744, 746 (9th Cir. 2011).  Here, the PSR indicates, "attorney representation is unknown" for the 2009 conviction.  (PSR ¶ 29.)  The Defendant did not provide any evidence to overcome the presumption that there was a valid waiver of counsel.  Moreover, undersigned counsel spoke with the PSR writer on August 26, 2019, who confirmed that she received information from Yuma County Justice Court in Somerton that the Defendant had counsel.

Therefore, this objection should be overruled because the Defendant failed to meet his burden. In the alternative, this objection is moot because he was represented by counsel.

    b. A fine of $10,000 is appropriate and not excessive despite the forfeiture of the property.

The United States believes that the $10,000 fine, as recommended in the PSR, is appropriate. Title 18, U.S.C. § 3571(a) allows for defendants "found guilty of an offense" to be sentenced to pay a fine. Title 18, U.S.C. § 3572(a) specifies that, in addition to 18 U.S.C. § 3553(a) and other factors, the court shall consider a defendant's "income, earning capacity, and financial resources," "the burden that the fine will impose upon the defendant," and "the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence." The United States Sentencing Guidelines (U.S.S.G.) § 5E1.2(a) states that "the court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine."

Here, the maximum fine allowed under the statute of conviction is $250,000. 18 U.S.C. §§ 555, 3571. At offense level 43, the Defendant's guideline range for a fine is $50,000 to $500,000. U.S.S.G. § 5E1.2(c)(3). Because the maximum fine under the Sentencing Guidelines exceeds the maximum fine allowed under the statute, the Defendant is subject to a maximum fine of $250,000. Probation recommends a below the guidelines fine of $10,000 based on the "defendant's positive monthly cash flow." (PSR at 29.) As such, a $10,000 fine is appropriate because it takes into account the factors under 18 U.S.C. § 3572(a). Moreover, pursuant to U.S.S.G. § 5E1.2(a), the Defendant has not established that he is unable or unlikely to be able to pay the fine.

The Defendant argues that the $10,000 fine should not be imposed because it is excessive in light of the forfeiture of the property. However, fines are part of a defendant's punishment. *See Southern Union Company v. United States*, 567 U.S. 343, 349 (2012) ("Criminal fines, like these other form of punishment, are penalties inflicted by the sovereign for the commission of offenses."). "Asset forfeiture is the taking of property by

the government … because it was used in a manner contrary to law." ASSET FORFEITURE AND MONEY LAUNDERING SECTION, U.S. DEPARTMENT OF JUSTICE, ASSET FORFEITURE PROCESS, Version 1.0. "Forfeitures are fines for purposes of the Eighth Amendment when they are at least partially punitive." *Timbs v. Indiana*, 139 S.Ct. 682, 690 (2019).

The Defendant objects to the $10,000 fine in light of the forfeiture of the property.[1] Pursuant to the plea agreement, the Defendant waived his interest in the property.[2] The Defendant cites to *Timbs* to support his argument that the $10,000 fine is excessive in light of the forfeiture. In *Timbs*, Indiana was seeking forfeiture of a $42,000 vehicle used to transport heroin. 139 S. Ct. at 686. However, *Timbs* does not apply because the Defendant is not fighting the forfeiture of the property.

In addition, the United States does not concede that the $10,000 fine should be considered with the property in this case because the fine is punishment and the property was used in a crime. However, even if the $10,000 fine is considered in conjunction with the property, the fine is still not excessive. To support his argument that the $10,000 is excessive, the Defendant notes that the combined value of the property was about $150,000.[3] (Doc. 38 at 10.) Using the Defendant's amount, that total is $160,000 if the $10,000 fine is added. As mentioned above, the maximum fine allowed under the statute of conviction is $250,000. 18 U.S.C. §§ 555, 357. The Defendant's applicable guideline range for a fine is $50,000 to $500,000. U.S.S.G. § 5E1.2(c)(3). Thus, the $10,000 fine is not excessive because, even if viewed in conjunction and using the amount proposed by the Defendant, the combined value of the property and the fine is about $90,000 below the

---

[1] For the reasons in footnote 2, the United States does not concede that the KFC was forfeited.

[2] Although the Defendant waived his interest in the KFC, it was not forfeited to the United States because the mortgage exceeded its value. Ultimately, the bank foreclosed on it for lack of payment.

[3] Because the KFC was not forfeited, the value of the property is about $70,000, which is substantially lower.

- 4 -

maximum fine allowed under the statute and the Sentencing Guidelines. *Cf. Timbs* at 139 S. Ct. at 686 (noting that the value of the forfeited vehicle was "more than four times the maximum $10,000 fine assessable to the defendant under the statute of conviction"); *United States v. Bajakajian*, 524 U.S. 321, 338-39 (1998) (finding that $15,000 in forfeiture plus the maximum fine of $5,000 under the Sentencing Guidelines was appropriate where the government was seeking to forfeit $357,144 in case involving the failure to comply with reporting requirements); *United States v. $132,245 in U.S. Currency*, 764 F.3d 1055, 1060 (9th Cir. 2014) (upholding the forfeiture of $132, 245 where the claimant could have faced a maximum fine of $250,000 under the statute and a maximum fine of $50,000 under the Sentencing Guidelines if he had been charged with bulk cash smuggling and failure to comply with reporting requirements).

Thus, for the above reasons, a $10,000 fine is appropriate and not excessive despite the forfeiture of the property.

  c. The Defendant is a citizen of the United States and he is not prohibited from returning to the United States.

The United States agrees with the Defendant that he is not prohibited from returning to the United States. (PSR at 21.) On August 26, 2019, undersigned counsel spoke with the PSR writer who confirmed that she will correct the PSR. Thus, this objection is moot.

III. ANALYSIS OF SENTENCING FACTORS AND RECOMMENDATION

For the reasons set forth below, the United States requests a sentence of 84 months, to be followed by five years of supervised release, and a $10,000 fine.

  a. History and Characteristics of the Defendant

The Defendant has two convictions for driving under the influence and one traffic violation. (PSR ¶¶ 28-30.) In 2014, the Defendant was convicted of money laundering because he was caught transporting $119,151 in drug proceeds. (PSR ¶ 31.) He was considered a minor participant in that offense and sentenced to 11 months in custody and three years of supervised release. *Id*. He was released from custody in June 2015. He

successfully completed supervise release and was terminated early. *Id.*

    b. The Nature and Circumstances of the Offense

About three years after the Defendant was released from custody, the Defendant purchased the KFC, which was used for a tunnel that spanned the United States and Mexico. Based on the sheer amount of drugs found in the trailer that the Defendant was hauling at the time of his arrest, it is clear that the purpose of the tunnel was to smuggle contraband into the United States from Mexico. It is also clear that the Defendant was involved in a very serious crime.

The United States disagrees with the Defendant that the traffic stop that led to the seizure of the drugs was unlawful. (Doc. 38 at 5-6.) If the motion to suppress had been filed, the United States would have argued that the traffic stop was proper, that sufficient reasonable suspicion was developed during the traffic stop, that the traffic stop was not prolonged to permit a canine sniff, and that the canine alert provided probable cause to search the totes where the drugs were ultimately found. *See Rodriguez v. United States*, 135 S. Ct. 1609 (2015) (holding that a dog sniff can be conducted during a traffic stop as long as the stop is not prolonged beyond the scope of the stop or reasonable suspicion exists if the stop is prolonged). Under the collective knowledge doctrine, the United States would have also argued that, based on observations at the KFC prior to the stop, other information known to investigators, the Defendant's actions during the traffic stop, and the canine alert, there was sufficient reasonable suspicion to stop the Defendant and probable cause to search the white Silverado and the trailer. *See United States v. Villasenor*, 608 F.3d 467, 475 (9th Cir. 2010) (explaining collective knowledge doctrine).

The United States also disagrees with the Defendant that police misconduct was involved because of the recordings issues. Rather, the United States would have argued that the stop was partly recorded because the SLPD officer who initially stopped the Defendant did not have recording equipment.

The Defendant recognizes that there is substantial risk if he lost on the suppression issue. (Doc. 38 at 9.) The United States also recognizes that there is substantial risk if the

United States lost on the suppression issue. After carefully reviewing the facts, weighing the litigation risks if the case proceeded to an evidentiary hearing and trial, and recognizing that the Defendant needed to be held responsible for his conduct, the United States offered the Defendant a stipulated sentence of 84 months. As mentioned in his pleadings, the Defendant also recognized the risks to him if he lost on the suppression issue and he accepted the government's offer. *Id*.

c. The Need for Adequate Deterrence

Section 3553(a) expressly provides for the court to consider general deterrence in making its sentencing determination. Section 3553(a)(2)(B) states that "[t]he court, in determining the particular sentence to be imposed, shall consider the need for the sentence imposed to afford adequate deterrence to criminal conduct."

Here, the Defendant's criminal history shows that he was involved in similar conducted before his involvement in the instant offense. He was sentenced to 11 months for his first conviction. (PSR ¶ 31.) A sentence of 84 months, to be followed by five years of supervised release, and a $10,000 fine should send a message to the Defendant, who is a repeat offender, and other drug distributors ns that they will be held responsible for their repeated involvement in drug trafficking. It is also a substantially higher sentence than his previous 11-month conviction.

d. Not Create Unwarranted Disparity Among Defendants

Title 18, U.S.C. § 3553(a)(6) states that in formulating a sentence, a court should "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Here, the United States recognizes that there may be a sentencing disparity among similarly situated defendants. However, in light of the substantial litigation risks for both parties, the United States urges this Court to consider the risks and the other sentencing factors, and sentence the Defendant in accordance with the plea agreement.

IV. CONCLUSION

The United States requests that this Court overrule the Defendant's objections. The

Defendant was properly assessed a criminal history point for his 2009 conviction. A $10,000 fine is appropriate in this case and not excessive. The United States agrees with Defendant that he is not prohibited from returning to the United States as a United States citizen. Finally, because of the substantial litigation risks for both parties, the United States urges the Court to accept the plea agreement and sentence the Defendant to 84 months, to be followed by five years of supervised release, and a $10,000 fine.

Respectfully submitted this 31th day of August, 2019.

        MICHAEL BAILEY
        United States Attorney
        District of Arizona

        *s/Maria R. Gutierrez*
        MARIA R. GUTIERREZ
        KEITH VERCAUTEREN
        Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Seth Apfel
Attorney for Defendant

*s/Maria R. Gutierrez*
MARIA R. GUTIERREZ
Assistant United States Attorney